UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONTROLLED AIR, INC. *and* KRISHNENDU MUKHERJEE<br>    *Plaintiffs*,<br>v.<br>WILLIAM BARR, *United States Attorney General*, *and* LAURA B. ZUCHOWSKI, *Director USCIS – Vermont Service Center*,<br>    *Defendants*. | Civil No. 3:19-cv-1420 (JBA)<br><br>February 28, 2019 |

**RULING DENYING DEFENDANTS' MOTION TO DISMISS**

Controlled Air, Inc., and its prospective employee, Krishnendu Mukherjee, challenge the U.S. Citizenship and Immigration Services' ("USCIS") denial of an H-1B visa petition that Controlled Air had filed on Mr. Mukherjee's behalf in 2019. Plaintiffs allege that this denial violated the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701, *et seq.*, as well as the Constitution's Equal Protection guarantee.

The Government moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, arguing that Plaintiffs lack standing because their injury was self-inflicted and not redressable. The Government also seeks dismissal under Rule 12(b)(6) for failure to state a claim.

For reasons discussed below, the Government's Motion [Doc. # 26] is GRANTED under Rule 12(b)(6).

**I. Facts Alleged**

*a. Parties*

Plaintiff Controlled Air, Inc., is a Connecticut corporation that hires highly skilled workers for the purpose of providing heating and cooling services. (Am. Compl. [Doc. # 27] ¶¶ 1, 16-17)

Plaintiff Krishnendu Mukherjee is a citizen of India who resides in New Haven, Connecticut. (*Id.* ¶ 2.) As a foreign student, Mr. Mukherjee is currently on F-1 visa status, and he is currently completing his Optional Practical Training ("OPT") with Controlled Air. (*Id.* ¶¶ 18-19.) Mr. Mukherjee is trained in engineering, and he recently obtained his Master's degree from the University of Bridgeport. (Ex. 2 (Chiocchio Aff.) to Pls.' Opp. to Def.'s Mot. to Dismiss [Doc. # 28-2] ¶ 8.) His OPT nonimmigrant visa status expires in July 2020. (*Id.* ¶ 19.)

Defendant William Barr is the United States Attorney General and the administrative head of the Department of Homeland Security ("DHS"). (*Id.* ¶ 3.) Defendant Laura B. Zuchowski is the director of the USCIS Vermont Services Center, a component of DHS. (*Id.* ¶ 4.)

b. *H-1B Filing Process*

The Immigration and Nationality Act ("INA") vests the Attorney General with broad discretion to set the terms for a foreign citizen's admission to the United States and the conditions under which a foreign citizen may receive nonimmigrant status for the purposes of employment. *See* 8 U.S.C. § 1184.

A foreign citizen who seeks to enter the United States as a temporary worker in a "specialty occupation" may be eligible for an "H-1B" visa. 8 U.S.C. § 1184(a)(15)(H)(i)(b). A "specialty occupation" is one that "requires . . . theoretical and practical application of a body of highly specialized knowledge, and . . . attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)(1).

Congress has set a statutory cap on the number of H-1B visas that can be issued each fiscal year. *See* 8 U.S.C. § 1184(g)(1)(A)(vii). The Government may issue up to 65,000 regular H-1B visas in a given fiscal year (the "regular cap"), and it may also issue an additional 20,000 H-1B visas to

foreign citizens who have earned postgraduate degrees from United States universities under the "Masters cap." *See id.*; 8 U.S.C. § 1184(g)(5)(C). The Government's "fiscal year . . . begins on October 1 of each year and ends on September 30 of the following year." 31 U.S.C. § 1102.

To petition for an H1-B visa, the employer first must file a Labor Condition Application ("LCA") with the Department of Labor identifying the specialty occupation job being offered and verifying that the employer will comply with program requirements. *See* 8 U.S.C. § 1182(n)(1). The LCA collects information about the employer and the specialty occupation, but it does not collect any information on the intended visa beneficiary. (*See* Ex. A (Plaintiffs' LCA) to Chiocchio Aff. [Doc. # 28-2].) As relevant here, the LCA requires the employer to state the start and end dates of the "period of intended employment" for the specialty position. (*Id.* at 1.) Because the LCA "shall be submitted by the employer . . . no earlier than six months before the beginning date of the period of intended employment shown on the LCA," the intended start date must fall within that six-month period. 20 C.F.R. § 655.721. To illustrate, if an employer files an LCA on March 1, then the employment start date provided for the specialty position can be no later than September 1. As part of the application, the employer must also "declare under penalty of perjury" that "the information contained therein is true and accurate." (Plaintiffs' LCA at 5.)[1] Once an LCA is submitted, the Department of Labor takes "seven (7) working days" to review the application "for

---

[1] In full, the LCA form states:

> I declare under penalty of perjury that I have read and reviewed this application and that to the best of my knowledge, the information contained therein is true and accurate. I understand that to knowingly furnish materially false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a federal offense punishable by fines, imprisonment, or both[.]

(Plaintiffs' LCA at 5.)

3

completeness and obvious errors or inaccuracies." (Ex. C (LCA Guide) to Chiocchio Aff. [Doc. # 28-2] at 2.)

If the Department of Labor approves the LCA, the employer then supplies the certified LCA to USCIS along with a Form I-129 petition requesting that the foreign worker—the petition's "beneficiary"—receive H-1B status. *See* 8 C.F.R. § 214.2(h)(4). This form is also completed by the employer, but it somewhat differs from the LCA in that it collects information about both the employer *and* the intended beneficiary. The form asks for beneficiary data and requires the employer to state the beneficiary's intended dates of employment. (Ex. B (Plaintiffs' Form I-129) to Chiocchio Aff. [Doc. # 28-2] at 5.) The employer must also provide a statement that it will comply with the terms of the LCA for the duration of the alien's authorized period of stay. *See* 8 C.F.R. § 214.2(h)(4)(iii)(B)(2). As with the LCA, the Form I-129 requires the employer and the form preparer to "certify, under penalty of perjury" that "all of the information" provided "is complete, true, and correct." (Plaintiffs' Form I-129 at 6-7.)

The filing period for Form I-129 submissions opens on April 1 each year, as this date falls six months before the October 1 fiscal year start date. *See* 8 C.F.R. § 214.2(h)(2)(i)(I) ("A petition filed under section 101(a)(15)(H) of the Act may not be filed earlier than 6 months before the date of actual need for the beneficiary's services or training."). USCIS then "monitor[s] the number of petitions received and will announce on its website the date that it receives the number of petitions projected as needed to meet the H–1B regular cap," which is a number in excess of the statutory cap. 8 C.F.R. § 214.2(h)(8)(iv)(B)(2). If USCIS hits this target within the first five days of the filing season, the agency will then close the season and use a random computer-selection process (the "lottery") to decide which petitions it will process in a given fiscal year and in what order. 8 C.F.R. § 214.2(h)(8)(ii)(B). USCIS then processes the Form I-129 petitions with their receipt numbers

4

and awards visas to applicants who qualify, up to the cap limit. Form I-129 petitions not selected in this lottery are automatically rejected. *Id*. Because the number of H-1B visas available each year is limited and routinely exceeded by the number of petitions filed, the lottery has become a regular feature of the H-1B visa application process.

    c. *Controlled Air's H-1B Application*

Controlled Air sought to employ Mr. Mukherjee as an HVAC design technician following the completion of his studies. (Am. Compl. ¶ 19.) To that end, Controlled Air sought to obtain an H-1B temporary worker visa for him. (*Id.*)

On or about February 26, 2019, Controlled Air submitted its LCA to the Department of Labor and "requested the maximum amount of time," listing an employment start date of August 26, 2019. (*Id.* ¶ 21; *see also* Plaintiffs' LCA at 1.) The LCA was certified on March 5, 2019. (Plaintiffs' LCA at 5.)

On March 26, 2019, Controlled Air prepared its Form I-129 for Mr. Mukherjee. (Plaintiffs' Form I-129 at 6-7.) Controlled Air listed Mr. Mukherjee's start date as August 26, 2019, which matched the date provided on the LCA. (*Id.* at 5.) The Form I-129 was submitted within the FY2020 filing period, which opened on April 1, 2019, and then closed on April 5, 2019, when USCIS hit its target number petitions. *See H-1B Fiscal Year (FY) 2020 Cap Season*, U.S. CITIZENSHIP & IMMIGRATION SERVS. (Apr. 11, 2019) https://www.uscis.gov/working-united-states/temporary-workers/h-1b-specialty-occupations-and-fashion-models/h-1b-fiscal-year-fy-2020-cap-season.

On May 4, 2019, USCIS verified Controlled Air's H-1B petition. (Am. Compl. ¶ 27.) USCIS did not, at this time, send Controlled Air a "notice of intent to deny or a request for evidence." (*Id.*)

On August 2, 2019, Controlled Air received a notice of denial from USCIS, which stated that that the H-1B petition for Mr. Mukherjee was rejected because the "Form I-129 petition

5

subject to FY20 cap did not list an employment start date of 10/01/2019 or later. You listed 08/26/2019 on your petition as the employment start date." (*Id.* ¶ 28.)

On September 10, 2019, Plaintiffs Controlled Air and Mr. Mukherjee brought this action, seeking both declaratory relief and mandamus against USCIS. Although Plaintiffs initially moved for a temporary restraining order and preliminary injunction "to preserve a visa number in connection with their petition and application for an H-1B visa," (*see* Pls.' Mot. for Prelim. Inj. [Doc. # 9] at 1), the parties thereafter jointly stipulated to a "mutually acceptable agreement that will ensure the preservation of the status quo as to the availability of a visa number should the Plaintiffs prevail on their claims," (Parties' Joint Stip. [Doc. # 12] at 1).

The Government now moves to dismiss, contending that Plaintiffs lack standing and that they have failed to state a claim. In support of the latter contention, the Government asks the Court to take judicial notice of two pieces of guidance issued by USCIS.[2] First, the Government notifies the Court that the USCIS website features a "Filing Tips" section that states:

> H-1B cap petitions and advanced degree exemption petitions for the FY 2020 cap *must include an employment start date of no earlier than October 1, 2019.* Do not file petitions earlier than six months before the requested employment start date. We will reject H-1B petitions requesting an earlier employment start date[.]

(Ex. A (USCIS Website) to Gov't Mot. to Dismiss [Doc. # 26-2] at 2.)

Second, the Government has provided a filing aid prepared by USCIS, which states that a beneficiary's "[r]equested start date must be on or after 10/01/2019 and within six months of the

---

[2] Agency publications that offer administrative guidance "are public records of which a court may properly take judicial notice." *Yu Mei Chen v. Nielsen*, 363 F. Supp. 3d 333, 340 (E.D.N.Y. 2019)

6

filing date" of the Form I-129 petition for an H-1B visa. (Ex. B (Form I-129 Checklist) to Gov't Mot. to Dismiss [Doc. # 26-2] at 2.)

II. Discussion

A. Standard of Review

"[A] claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008)). "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000). In response to a motion to dismiss pursuant to Rule 12(b)(1), "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

B. Standing

The Government contends that plaintiffs lack Article III standing. Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of*

7

*Wildlife*, 504 U.S. 555, 560 (1992). "Whether a claimant has standing is the threshold question in every federal case, determining the power of the Court to entertain the suit," *Fair Hous. in Huntington Comm. Inc. v. Town of Huntington*, 316 F.3d 357, 361 (2d Cir. 2003). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).

Specifically, the Government contends that Plaintiffs lack standing case because "any injuries they incurred are traceable only to their own failure to properly petition for an H-1B visa" and because "Plaintiffs cannot establish that their claims are redressable." (Gov't Mem. Supp. Mot. to Dismiss [Doc. # 26-1] at 10-11.) The Court will address these arguments in turn.

*1. Self-Inflicted Injury*

"In order to successfully allege standing to bring a suit in federal court, a complaint must plausibly allege," among other things, "that the plaintiff has suffered an 'injury in fact,' which the Supreme Court defines as 'an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent." *Citizens for Responsibility & Ethics in Washington v. Trump*, 939 F.3d 131, 142 (2d Cir. 2019) (alteration in original) (quoting *Lujan*, 504 U.S. at 560).

The Second Circuit has held that "a plaintiff may not establish injury for standing purposes based on a 'self-inflicted' injury." *Natural Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013). But the standard for a "self-inflicted" injury is stringent: "An injury is self-inflicted so as to defeat the causation necessary to establish standing . . . only if the injury is so completely due to the plaintiff's own fault as to break the causal chain." *Id.* (internal quotation marks and alteration omitted).

The Government argues that Plaintiffs' alleged injury is self-inflicted because the Form I-129 that they submitted during the FY20 application cycle listed a start date—August 26, 2019—"that did not fall within the correct fiscal year," and so were denied because "they did not 'establish that [they] [were] eligible for the requested benefit' for which they sought." (Gov't Mem at 11 (quoting 8 C.F.R. § 103.2(b)(1)). The Government also argues that even if USCIS were to instead process the Form I-129 as part of the FY19 application cycle, "the 2019 fiscal year cap had been reached" by the time Plaintiffs filed "and USCIS had accepted a sufficient number of petitions to meet the numerical limits for fiscal year 2019." (*Id.*) In effect, the Government argues that Plaintiffs either filled in the wrong date or submitted their petition too late, depending on how their application is construed.

Plaintiffs respond that they have satisfied the injury requirement because the rejection of their H-1B petition by USCIS would cause "Controlled Air [to] lose its chance to employ an extremely critical employee, and Mr. Mukherjee [to] lose his opportunity to maintain legal status at the end of his Occupational Training." (Pls.' Opp. at 24.) Plaintiffs also maintain that they did not self-inflict this injury, as it is traceable to USCIS's rejection of their petition. (*See id.* at 31.)

In *National Basketball Retired Players Association v. United States Citizenship & Immigration Services*, the Government moved to dismiss a similar challenge concerning USCIS's treatment of H-1B start dates and offered the same argument that the "alleged injuries [we]re 'entirely self-inflicted' and thus not traceable to the agency's own actions." 2017 WL 2653081, at *4 (N.D. Ill. June 20, 2017). The district court rejected that argument, holding that "the alleged injury is traceable to the agency's decision to reject the petition—which is also the focus of the plaintiffs' claims—rather than to a legal doctrine like preclusion that the plaintiffs themselves triggered." *Id.* The court further explained that USCIS's "traceability argument seems more

9

properly based in its argument that the plaintiffs' claims fail on the merits because the agency's rejection of the petition was proper." *Id.*

The same logic applies here. Plaintiffs completed their LCA and Form I-129 in accordance with their understanding of the regulations governing the H-1B application process. USCIS rejected their petition under a different interpretation of these regulations. If Plaintiffs' understanding of the regulations is indeed correct, then the injury that they suffered would be solely traceable to USCIS's erroneous decision to deny their petition. As such, Plaintiffs have standing to bring this case.

*2. Redressability*

The Government argues that even if Plaintiffs have suffered an injury-in-fact, they still lack standing because they have not plausibly alleged that "it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Citizens for Responsibility & Ethics*, 939 F.3d at 142 (quoting *Lujan*, 504 U.S. at 560). The Government contends that the alleged injury is not redressable because "USCIS [has] reached the Congressionally-mandated 65,000 H-1B visa regular cap for fiscal year 2020" and that "this Court cannot order USCIS to act outside its statutory and regulatory authority." (Gov't Mem. at 11 (citing *H-1B Fiscal Year (FY) 2020 Cap Season*, U.S. CITIZENSHIP & IMMIGRATION SERVS. (Apr. 11, 2019) https://www.uscis.gov/working-united-states/temporary-workers/h-1b-specialty-occupations-and-fashion-models/h-1b-fiscal-year-fy-2020-cap-season).)

Plaintiffs do not directly respond to this argument, but note in their brief that "Defendants have stipulated to the availability of a visa number" for Mr. Mukherjee in the event that Plaintiffs prevail on their claims. (Pls.' Opp. at 28.)

Given this stipulation, it appears that Plaintiffs have necessarily shown that their injury could be redressed by a favorable decision. This stipulation demonstrates that the parties have contemplated the requested relief in this case and have ensured that this relief remains available. The Government effectively conceded this point at oral argument, acknowledging that its redressability argument is in "tension" with its agreement to set aside a visa number in the event that Plaintiffs prevail on their claims.

The Court thus concludes that Plaintiffs have shown that their alleged injury is redressable.

**C. Failure to State a Claim**

Apart from its standing arguments, the Government contends that Plaintiffs have failed to state a claim upon which relief may be granted. The Government asserts that it has not violated the APA or the Constitution's Equal Protection guarantee, and, further, that Plaintiffs are not entitled to mandamus.

*1. Violation of Administrative Procedures Act*

The APA directs the Court to "set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Plaintiffs allege at Counts One, Five, and Six that USCIS violated this statute by "fail[ing] to properly interpret Immigration Statutes and Regulations and [by] appl[ying] an improper burden of proof." (Am. Compl. ¶¶ 44, 65.) The Government argues that its rejection of Plaintiffs' Form I-129 was not arbitrary or capricious because "Form I-129 petitioners are free to list the beginning date of the period of intended employment as October 1 of the fiscal year at issue." (Gov't Mem. at 15.)

Judicial review of an agency action is "narrow" and "deferential." *Cty. of Westchester v. U.S. Dep't of Hous. & Urban Dev.*, 802 F.3d 413, 431 (2d Cir. 2015). "An agency decision will thus only

be set aside if it has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* When an agency is interpreting its own genuinely ambiguous regulations, this interpretation will be given deference if it is reasonable and "reflect[s] an agency's authoritative, expertise-based, fair, or considered judgment." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019) (internal quotation marks and alterations omitted) (upholding but cabining *Auer v. Robbins*, 519 U.S. 452 (1997)).

Congress has mandated that "[t]he total number of aliens who may be issued [H-1B] visas or otherwise provided nonimmigrant status during any fiscal year . . . may not exceed . . . 65,000," 8 U.S.C. § 1184(g)(1)(A)(vii), with the "fiscal year . . . begin[ning] on October 1," 31 U.S.C. § 1102. The Department of Homeland Security has adopted a regulation that restates the terms of this statute. *See* 8 C.F.R. § 214.2(h)(8)(i)(A).

DHS has also adopted regulations as to the timing and processing of H-1B visa petitions. These regulations provide that an H-1B petition "may not be filed earlier than 6 months before the date of actual need for the beneficiary's services or training." 8 C.F.R. § 214.2(h)(2)(i)(I). That means that the earliest a Form I-129 may be submitted for any given fiscal year is April 1 of the preceding fiscal year. The regulations also contemplate that there may be an abbreviated filing season if USCIS receives an excess number of petitions in a given fiscal year:

> When calculating the numerical limitations or the number of exemptions under section 214(g)(5)(C) of the Act for a given fiscal year, USCIS will make numbers available to petitions in the order in which the petitions are filed. USCIS will make projections of the number of petitions necessary to achieve the numerical limit of approvals, taking into account historical data related to approvals, denials, revocations, and other relevant factors. USCIS will monitor the number of petitions

(including the number of beneficiaries requested when necessary) received and will notify the public of the date that USCIS has received the necessary number of petitions (the "final receipt date").

8 C.F.R. § 214.2(h)(8)(ii)(B).

In addition to these regulations, USCIS has offered agency guidance on its website explaining how to fill out a Form I-129 in accordance with these regulations. The "Filing Tips" section on the USCIS website explains that "H-1B cap petitions and advanced degree exemption petitions for the FY 2020 cap *must include an employment start date of no earlier than October 1, 2019. . . .* We will reject H-1B petitions requesting an earlier employment start date[.]" (USCIS Website at 2.) A USCIS guide to filling out the Form I-129 also states that a petitioner's "[r]equested start date must be on or after 10/01/2019." (Form I-129 Checklist at 2.) This guidance is entitled to deference under *Auer* and *Kisor*, as 1) the regulations do not specify whether a petition for an earlier fiscal year may be submitted during the upcoming fiscal year's application cycle and so are genuinely ambiguous, and 2) the regulations are reasonable and reflect USCIS's longstanding and considered judgment that petitions submitted in a given filing season must related to the proper fiscal year.[3]

---

[3] At Count Three of their Complaint, Plaintiffs allege that this guidance as to the October 1 employment start date amounts to an unpublished regulation in violation of 5 U.S.C. § 5[5]3(b). (Am. Compl. ¶¶ 58, 59.) Section 553(b) states that a "[g]eneral notice of proposed rule making shall be published in the Federal Register." However, this same statute also provides that "this subsection does not apply . . . to interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice[.]" 5 U.S.C. § 553(b)(A).

Given that these two pieces of guidance do nothing more than explain how USCIS applies the regulations governing the H-1B filing process, they clearly qualify as "'interpretive rules' . . . that merely 'advise the public of the agency's construction of the statutes and rules which it administers.'" *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1811 (2019). As such, Count Three of Plaintiffs' Complaint fails to state a claim.

13

Nothing in the authorizing statute, regulations, and guidance directs an H-1B petitioner to use the start date provided in the LCA as the start date on the Form I-129. The regulatory scheme provides only the following criteria as to how the LCA is incorporated into the H-1B petition:

> The Petitioner shall submit the following with an H–1B petition involving a specialty occupation: (1) A certification from the Secretary of Labor that the petitioner has filed a labor condition application with the Secretary, (2) A statement that it will comply with the terms of the labor condition application for the duration of the alien's authorized period of stay[.]

8 C.F.R. § 214.2(h)(4)(iii)(B).

USCIS implements the H-1B regulatory scheme in the following manner. To avoid exceeding the statutory cap in a given fiscal year, USCIS advises petitioners in advance of filing that it will only process applications for the relevant fiscal year—meaning that forms must list a start date that falls within that time period, *i.e.* after October 1 of that year. (*See* USCIS Website at 2.) USCIS then conducts a publicized filing season, with an April 1 opening date to submit petitions for the upcoming fiscal year. It then processes petitions in the order in which they are received and, upon hitting a target number of petitions, closes the filing season until the next fiscal year.

Having considered the regulatory scheme and its application, the Court concludes that USCIS did not act in an arbitrary or capricious fashion by rejecting Plaintiffs' petition. Here, Plaintiffs submitted their Form I-129 on or around April 1, 2019, which was part of the 2020 fiscal year application cycle. But their Form I-129 listed a start date of August 26, 2019, which fell within the 2019 fiscal year. USCIS properly rejected this petition because the agency clearly instructed applicants that it would reject any petition that listed an employment start date preceding the 2020 fiscal year. As already established, this instruction was a reasonable interpretation of DHS regulations that is entitled to deference.

Plaintiffs' arguments against this denial are unavailing. In essence, Plaintiffs assert that the H-1B scheme presents a "clear and unreconcilable conflict of regulations" that "requires a petitioner to make knowing misstatements under penalties of perjury in order to obtain a visa benefit." (Pls.' Opp. at 8.) Plaintiffs' argument is premised on the idea that a petitioner must list identical employment start dates on the LCA and the Form I-129. They contend that it is impossible to satisfy such a condition while working within the USCIS application timeframe. Plaintiffs explain that because the LCA cannot be certified more than six months in advance, petitioners would need to submit an LCA on April 1 in order to list an October 1 start date. But if petitioners were to wait until April 1 to submit the LCA, then they would miss the filing window for the Form I-129 application period, which starts that same day. As the Government concedes, such a scheme would amount to an "intractable Catch-22 in which no properly-executed H-1B visa petition could ever be approved." (Gov't Mem. 13.)[4]

---

[4] The Court observes that *Retired Players* confronted this very Catch-22 scenario and ultimately concluded that the Government's action was neither arbitrary nor capricious, but appears to have overlooked critical facts in doing so.

In *Retired Players*, Petitioners submitted a Form I-129 listing an October 1 start date along with an LCA listing a June start date but were rejected by USCIS because the "Form I-129 petition subject to FY 17 cap has an employment date earlier than 10/01/2016." 2017 WL 2653081, at *2. The court acknowledged that the Form I-129 petition did, indeed, list Plaintiffs' "dates of intended employment as running from '10/1/2016' to '06/01/2019,'" but nonetheless held that it was "not arbitrary, capricious, or contrary to law for the USCIS to consider the statutorily-required LCA when evaluating the sufficiency of the petition that the LCA was filed to support." *Id.* at *2, *5. Put otherwise, the district court concluded that the National Basketball Retired Players Association's H-1B application was properly rejected because the employment start dates were in conflict.

In reaching this conclusion, the *Retired Players* Court failed to address the fact that the LCA cannot be submitted "earlier than six months before the beginning date of the period of intended employment shown on the LCA," 20 C.F.R. § 655.721, or discuss the impossibility of obtaining a certified LCA with an October 1 start date in time for the Form I-129 filing season.

However, Plaintiffs' argument fails on this point because the LCA and the Form I-129 address different subjects of inquiry, and thus can be filed on different timelines. The LCA collects information about the "worker position[]" available with the employer, including the time period that the employer will have that "temporary need." (Plaintiffs' LCA at 1.) In contrast, the Form I-129 collects information about the *specific beneficiary who will fill that need*, including the dates that this beneficiary will be employed in the worker position described in the LCA. (*See* Plaintiffs' Form I-129 at 5.) It would not be obviously contradictory for Controlled Air to state that it has a need for a technician starting on August 26, 2019 and that it will employ Mr. Mukherjee in that technician role starting on October 1, 2019, when he becomes eligible for an FY2020 visa.

Plaintiffs' argument that the H-1B scheme requires petitioners to perjure themselves if they list different dates on the two forms fails for the same reasons. If the LCA and the Form I-129 are asking fundamentally different questions, then it is possible to list different start dates on each while still providing "complete, true, and correct" information. (Plaintiffs' Form I-129 at 6-7.)

Plaintiffs also argue that USCIS violated 22 C.F.R. § 40.6 in denying their petition, as that regulation provides that a "visa can be refused only upon a ground specifically set out in the law or implementing regulations." But as explained above, the implementing regulations allow USCIS to close the H-1B application season in a given fiscal year after the agency hits its target number of

---

At oral argument, the Government acknowledged that the *Retired Players* case was not persuasive on this specific issue. When asked about the tension between that case and the position that the Government now takes, the Government also represented that USCIS would consider FY2020 H-1B petitions that listed conflicting start dates to be properly filed regardless of the *Retired Players* ruling. (*See also* Gov't Mem. at 15 ("Form I-129 petitioners are free to list the beginning date of the period of intended employment as October 1 of the fiscal year at issue.").)

petitions. Plaintiffs submitted a Form I-129 with an FY19 start date after the FY19 cycle had already closed. Thus, USCIS acted within its regulatory powers by rejecting this petition.

Finally, Plaintiffs note that "the instruction[s] for an H-2B [visa] require[,] 'A petition for H-2B workers must request an employment start date that matches the start date approved by the Department of Labor on the temporary labor certification. Petitions without matching start dates may be denied." (Pls.' Opp. at 19-20 (quoting Ex. 1 (Form I-129 Instructions) to Pls.' Opp. [Doc. # 28-1] at 19).) But whether H-2B petitioners must list matching dates on their Forms I-129 has no bearing on whether H-1B petitioners must do the same. If anything, the absence of this instruction to H-1B petitioners suggests that they are not subject to such a requirement.

Because Plaintiffs have not alleged that USCIS acted in a manner that was arbitrary, capricious, or otherwise not in accordance with law, they have failed to state a claim for a violation of the APA at Counts One, Five, and Six of their Complaint.

*2. Equal Protection Violation*

Controlled Air, acting on its own, alleges at Count Two that USCIS violated its right to equal protection by "determin[ing] that Controlled Air should be required to meet a higher standard of eligibility for classification of an H[-]1B worker" and that USCIS does "not require this standard of other similarly situated U.S. Corporations in similar circumstances." (Am. Compl. ¶¶ 54-56.) The Government responds that "Plaintiffs' bare bones allegations are not enough to survive a motion to dismiss" as the "Complaint fails to identify any comparator" and as Plaintiffs have "fail[ed] to allege" that "USCIS intentionally singled them out for differential treatment." (Gov't Mem. at 20-21.)

"[T]here is a well-established equal protection component to the Fifth Amendment Due Process Clause applicable to the federal government." *Skelly v. I.N.S.*, 168 F.3d 88, 91 (2d Cir. 1999)

(citing *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)). The Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). The Second Circuit has further explained that:

> [I]n order to succeed on a 'class of one' claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high. More precisely, a plaintiff must establish that he and a comparator are *prima facie* identical by showing that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake. We explained that the existence of highly similar circumstances provides the basis for inferring that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain.

*Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019) (internal quotation marks, alteration, and citations omitted).

Here, Controlled Air has not identified any specific comparators, other than to say that it was treated differently than "similarly situated corporations." (Am. Compl. ¶¶ 54-56.) Controlled Air has also failed to include any allegations as to the circumstances of these similarly situated corporations. Further, Controlled Air has not alleged that it was "*intentionally* singled out for reasons that . . . lack any reasonable nexus with a legitimate governmental policy." *Hu*, 927 F.3d at 92. Given that the existence of "*prima facie* identical" comparators and "intentionally" different treatment are necessary elements of a class-of-one claim, these omissions are fatal. *Id.*

Because Controlled Air has failed to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," it has failed to state an Equal Protection claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*3. Mandamus*

At Count 4, Controlled Air "seeks a mandamus from this Court ordering the Defendants to reopen and adjudicate their H[-]1B petition in accordance with law." (Am. Compl. ¶ 61.)

"Mandamus may be awarded only if the plaintiff proves that (1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." *Benzman v. Whitman*, 523 F.3d 119, 133 (2d Cir. 2008).

Because USCIS acted in accordance with law and Plaintiffs have thus failed to state a claim upon which relief may be granted, there is no basis to conclude that Controlled Air has a "clear right to the relief sought" through mandamus or that USCIS has a duty to act in the manner requested. *Id.* As Controlled Air has not alleged facts establishing that it is entitled to the processing of its Form I-129 by USCIS, the Court dismisses Plaintiffs' claim for mandamus relief.

### III. Conclusion

Accordingly, the Government's Motion to Dismiss [Doc. # 26] is GRANTED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 28th day of February, 2020.